UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

KELLY J. CHAVEZ,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 1:19-CV-301 DRL

OPINION & ORDER

Kelly Chavez appeals from the Social Security Commissioner's judgment denying her application for disability insurance. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Ms. Chavez requests remand of her claims for further consideration or alternatively a reversal for benefits. Having reviewed the underlying record and the parties' arguments, the court denies Ms. Chavez's request and affirms the decision of the administrative law judge.

BACKGROUND

This decennial case is on its third return to this court. The case began in November 2010, when Ms. Chavez filed an application for benefits, alleging a disability onset date of September 1, 2007 [R. 723]. Her claims were heard at an administrative hearing by Administrative Law Judge (ALJ) Yvonne Stam [R. 723]. ALJ Stam denied Ms. Chavez's petition on the basis that she wasn't disabled as defined by the Social Security Act [R. 723-35]. Thereafter, Ms. Chavez challenged the decision in this court. The court issued a decision remanding the case for further proceedings and a new decision. *See Chavez v. Colvin*, 2015 U.S. Dist. LEXIS 49914 (N.D. Ind. Apr. 15, 2015) (Rodovich, J.).

On remand, ALJ Stam held a new hearing and issued another unfavorable decision [R. 618-41]. Ms. Chavez again appealed. The district court affirmed the decision this time, *Chavez v. Berryhill*,

2017 U.S. Dist. LEXIS 114579 (N.D. Ind. July 24, 2017) (Lee, J.), but the Court of Appeals remanded the case because the vocational expert's testimony was unreliable, *see Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018). ALJ Terry Miller held a new administrative hearing on January 17, 2019 and issued another unfavorable decision on March 6, 2019. Ms. Chavez appeals this decision.

## STANDARD

The court has authority to review the decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because Ms. Chavez did not file exceptions and the Appeals Council did not otherwise assume jurisdiction, the court evaluates the ALJ's decision as the Commissioner's final word. *See* 20 C.F.R. § 404.984; *see also Murphy v. Berryhill*, 727 F. Appx. 202, 206 (7th Cir. 2018) (the ALJ's decision is final if the claimant skips the Appeals Council after remand).

The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4)

2

if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

The case has winnowed to one question: whether the ALJ's decision at step five is supported by substantial evidence. At step five, the ALJ, relying on vocational expert (VE) testimony, found that Ms. Chavez could perform work that exists in significant numbers in the national economy [R. 1286]. Because of his determination at step five, the ALJ denied Ms. Chavez benefits [R. 1289]. Ms. Chavez attacks the reliability of the vocational expert's testimony.

Before the court addresses the most recent ALJ decision, it is helpful to review the history of vocational expert testimony in this case. After Ms. Chavez's second round in this court, she appealed the decision, arguing that the vocational expert testimony was unreliable—the court agreed with her. *See Chavez*, 895 F.3d at 970-71. That decision is both the law of this circuit and of this case. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (law of case doctrine requires an ALJ to "conform [ ] further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart").

The vocational expert in Ms. Chavez's second administrative hearing presented two wildly different calculations for jobs in the national economy. For one job—bench assembler—the vocational expert found that the equal distribution theory resulted in 108,000 jobs in the national economy. *Id.* at 966. Another source, JobBrowser Pro, estimated only 800 bench assembler positions existed in the national economy. *Id.* at 966. Despite the drastic difference between these calculations, the vocational expert relied on the equal distribution calculation. When asked (repeatedly) by the ALJ

3

why he relied on the equal distribution calculation, the vocational expert couldn't offer a better explanation other than he thought it "almost logical that there are more bench assemblers in the national economy than 800." *Id.* at 967. This circuit held that more was required of the vocational expert for his testimony to be reliable. *Id.* at 970.

An ALJ's decision based on unreliable vocational expert testimony is equivalent to a finding that the decision wasn't supported by substantial evidence. *Id.* at 968 (quoting *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008)). When a claimant challenges a vocational expert's job estimates, the ALJ must require the vocational expert to offer a reasoned and principled explanation. *Id.* at 969 (suggesting the ALJ make an inquiry into the reliability of the vocational expert's conclusion that is similar though not necessarily identical to that under Federal Rule of Evidence 702) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Congress intended social security hearings to be informal and for the strict rules of evidence not to apply).

A vocational expert could support his decision by "drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs." *Chavez*, 895 F.3d at 970. This is particularly true when a vocational expert relies on the equal distribution theory. This circuit has repeatedly criticized the method's reliability. *See id.* at 969 (collecting cases discussing the equal distribution method). This method "operates on the illogical assumption that all job titles within a particular DOT job group exist in equal numbers in the national economy." *Id.* at 966. This assumption "about the relative distribution of jobs within a broader grouping" lacks empirical footing. *Id.* at 969. Although wary of the reliability of the equal distribution method, the court emphasized that it was not enjoining its use by vocational experts; rather, the court found that an ALJ must require more than the mere speculation presented by the vocational expert in Ms. Chavez's second hearing. *Id.* at 970 (quoting *Donahue*, 279 F.3d at 446) ("We are left with the possibility that the job-number estimates were 'conjured out of whole cloth.'"). Any job-numbers

4

testimony in this most recent administrative hearing must provide more than what was provided by the previous vocational expert. *See id.*

In the most recent administrative hearing, the vocational expert testified that an individual with Ms. Chavez's limitations would be capable of performing the requirements of a hand packager [DOT 559.687-074] (approximately 119,000 jobs available nationally), mail sorter [DOT 209.687-026] (approximately 72,000 jobs), and office helper [DOT 239.567-010] (approximately 92,000 jobs) [R. 1286, 1467].[1] He based his responses on his twenty years of experience [R. 1467] and data from U.S. Publishing [R. 1473].

The vocational expert began with a standard occupational classification (SOC) code [R. 1470]. When asked how he allocated the job numbers associated with general SOC codes to the specific DOT titles provided, the vocational expert pointed to numbers provided by U.S. Publishing [R. 1287, 1473].[2] U.S. Publishing hires labor market statisticians who are certified vocational rehabilitation counselors [R. 1473]. These statisticians obtain their information from the U.S. Department of Labor (occupational employment statistics), the Census Bureau, and employer and employee reports. *Id.* Using a running or moving mean specific to the SOC code, U.S. Publishing estimates job opportunities in national and metropolitan areas for each reported code [R. 1897]. That data is averaged with census data for a percentage of the total labor force [R. 1898]. Local area unemployment statistics (LAUS) are then applied to that average to update employment estimates. *Id.* The DOT titles are then subdivided into the total employment estimates by SOC code [R. 1899]. They are again subdivided by

---

[1] The Dictionary of Occupational Titles (DOT) is a catalog of jobs that contains no statistics regarding the number of jobs in a given category that exist in the national economy. *See Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014).

[2] The SOC system was developed by the Bureau of Labor Statistics to replace the DOT system. *See Brault v. SSA*, 683 F.3d 443, 447 (2d Cir. 2012). The SOC codes are much broader than the DOT titles, meaning many DOT titles might fall within a single SOC code. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 2020 U.S. App. LEXIS 23772, 8-9 (11th Cir. 2020). "Thus a VE must use some method for associating SOC-based employment numbers to DOT-based job types." *Brault*, 683 F.3d at 446.

skill and exertional levels. *Id.* This gives an estimate of jobs listed by code in the Occupational Employment Quarterly II 2.0 (OEQII 2.0). *Id.*

The vocational expert testified that U.S. Publishing does not use an equal distribution method to calculate its numbers [R. 1474]. He testified that U.S. Publishing allocates specific DOT title numbers based on "information from the reports" and some type of mathematical formula [R. 1474-75]. As an example to demonstrate the absence of the equal distribution method, he pointed to two DOT titles within the same SOC grouping reported by U.S. Publishing: hand packager (unskilled, light work) with approximately 119,000 jobs versus circuit board tester (unskilled, sedentary work) with approximately 117,000 jobs [R. 1473].

On crossexamination, Ms. Chavez asked if the vocational expert knew the precise mathematical formula used by U.S. Publishing to calculate the job allocation. *Id.* He did not [R. 1475]. Ms. Chavez raised an objection to the reliability of the vocational expert's testimony. *Id.* The ALJ did not engage in any follow up questioning. In his decision, the ALJ discussed and then overruled Ms. Chavez's objection [R. 1288]. The ALJ found the vocational expert's responses and explanations regarding the methodology to be sufficient; therefore, he found the testimony reliable. *Id.*

Substantial evidence supports the ALJ's decision. *See Chavez*, 895 F.3d at 969-70 (suggesting the ALJ engage in an inquiry upon a claimant's challenge to reliability, but "[s]ubstantial evidence remains the governing standard"). Unlike the previous expert, this vocational expert didn't arbitrarily choose between two drastically different calculations. *Cf. id.* at 966. He provided a source on which he relied, and a recognized one. *Cf. Herrmann*, 772 F.3d at 1113-14 (remanding because vocational expert testimony was unreliable when he didn't cite any source used for his calculations, except the DOT, which does not list numbers for jobs in the national economy). He testified specifically to the number of jobs according to each DOT title, not the SOC groups generally. *Cf. Goode*, 966 F.3d 1277, 2020 U.S. App. LEXIS 23772 at 15-16 (remanding the case because the vocational expert didn't take any

steps to figure out how many of the jobs within the SOC code should be allocated to the specific DOT title). He didn't use the equal distribution method. *See Chavez*, 895 F.3d at 970 (holding that though its use is not enjoined, a vocational expert must rely on more than just the equal distribution method). Use of that method would certainly have required the ALJ to make a more exacting inquiry into the vocational expert's conclusions, *see id.*; but the vocational expert specifically stated that the equal distribution method wasn't used in this estimate, *cf. Jentzen v. Colvin*, 2016 U.S. Dist. LEXIS 35760, 12-14 (N.D. Ind. Mar. 18, 2016) (Simon, J.) (ALJ should have investigated more when vocational expert presented job numbers based on dividing the broader category equally).

The court finds that the vocational expert gave a sufficiently reasoned and principled explanation for how he arrived at his numbers. *See Chavez*, 895 F.3d at 969. He relied on knowledge "gleaned from reviewing relevant data sources," *i.e.*, U.S. Publishing. *Id.* at 970; *see also Luzar v. Saul*, 2020 U.S. Dist. LEXIS 161273, 9-10 (W.D. Wis. Sept. 3, 2020) (affirming ALJ's reliance on vocational expert testimony using numbers from U.S. Publishing because claimant did not have specific problems with the numbers and because U.S. Publishing is a source on which vocational experts customarily rely); *Hudson v. Saul*, 2020 U.S. Dist. LEXIS 52552, 19-20 (N.D. Ind. Mar. 26, 2020) (Simon, J.) (affirming an ALJ's reliance on a vocational expert's numbers from U.S. Publishing and finding that "[a]ny error committed by the ALJ in not inquiring further is harmless since the vocational expert fully explained his methodology"); *Buis v. Colvin*, 2015 U.S. Dist. LEXIS 16326, 18-19 (S.D. Ind. Feb. 11, 2015) (Young, J.) (finding vocational expert's testimony reliable over claimant's argument that the vocational expert's reliance on U.S. Publishing wasn't reliable because its methodology or margin of error was unknown).

Ms. Chavez wonders how a claimant could possibly conduct a meaningful crossexamination without knowing the mathematical formula used by the underlying source. The United States Supreme Court has held that, even when vocational experts refuse to disclose data supporting their conclusions,

claimants can "probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions." *Biestek*, 139 S. Ct. at 1157 (citing *Chavez*, 895 F.3d at 969-70). Ms. Chavez engaged in the same level of crossexamination the Court envisioned—she inquired as to the vocational expert's sources and methods and questioned whether they were reliable.

Even if U.S. Publishing's data is somehow imperfect, as data can be, "VEs cannot be expected to formulate opinions with more confidence than imperfect data allows." *Chavez*, 895 F.3d at 970. "A VE's estimate will be just that—an estimate. . . . The VE necessarily must approximate, and there is no way to avoid uncertainty in doing so." *Id.* at 968. The vocational expert here relied on relevant data, *id.* at 970, and, unlike the previous expert in this case, didn't conjure his conclusion "out of whole cloth." *Donahue*, 279 F.3d at 446.

## CONCLUSION

Accordingly, the ALJ's decision was based on substantial evidence. The court DENIES Ms. Chavez's request for remand and AFFIRMS the decision of the ALJ. This order terminates the case.

SO ORDERED.

September 11, 2020                    *s/ Damon R. Leichty*
                                      Judge, United States District Court